

RECEIVED

JUN 2 6 2019

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 7:19-cv-116-D

| | | |
|---|---|---|
| PAUL A. LEWIS | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | COMPLAINT |
| | ) | |
| MILLENNIUM SPORTS CLUB, | ) | |
| PATRIK CONTEH and ROBERT J. | ) | |
| NAUSEEF | ) | |
| Defendants | ) | |

## COMPLAINT

The plaintiff, Paul A. Lewis, moves the Court for entry of judgment in his favor against Defendants, and in support of such Complaint avers as follows:

## NATURE OF ACTION

1. Plaintiff Paul Lewis brings this action individually against Defendant Millennium Health Club, and its Owner, Defendant Patrick Conteh, alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. Section 12101 et seq. (the "ADA") and its implementing regulations in North Carolina, including N.C.G.S. Section 168A-4.

2. This complaint is also an action for defamation under North Carolina law against defendants Conteh and Nauseef.

3. Plaintiff is a disabled individual. He brings this action against Defendant Millennium and its owner, defendant Patrik Conteh, for terminating him from membership at Millennium in violation of the Americans with Disabilities Act.

4. Plaintiff has a disability; Millennium is a place of public accommodation and defendant Conteh denied plaintiff full and equal treatment because of his disability.

5. Plaintiff seeks a declaration that defendant Conteh's terminating him from membership

due to his disabilities was a violation of federal law.

6. Plaintiff seeks an injunction, requiring defendant Conteh to readmit him to Millennium gym as a full-fledged member.

7. Plaintiff seeks compensatory and punitive damages due to the emotional and mental distress caused to him by the unlawful actions, including defamation of character by defendants Conteh and Nauseef.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

8. On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law that made it illegal for businesses to discriminate against disabled individuals.

9. The ADA broadly protects the rights of individuals with disabilities with respect to employment, access to State and local government services, as well as public accommodation and other important areas of American life.

10. Title III of the ADA prohibits discrimination in the activities of places of public accommodation. It requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. Sections 12181-89.

11. A public accommodation must provide modifications of its programs so that a person with a disability is able to participate, unless a modification would be an undue burden, or fundamentally alter the nature of goods or services provided.

## JURISDICTION AND VENUE

12. This Court has federal question jurisdiction over the ADA claims asserted herein pursuant to 28 U.S.C. Section 1331 and 42 U.S.C. Section 12188.

13. This case was originally filed in the Middle District of North Carolina where Millennium gym is located and where the actions and omission complained of in this case took place. See *Lewis v. Millennium, et al.,* 1:17-cv-217 United States District Court for the Middle District of North Carolina.

14. However, plaintiff's case was summarily dismissed on summary judgment on April 11th 2019 on the purported grounds that plaintiff had not presented evidence of his disability and that there was nothing in dispute permitting the case to move forward to trial.

15. This grant of summary judgment was set forth in an Order in which the presiding judge wrote that he "could not find" evidence located in the record which supported plaintiff's claims, which plaintiff had attached to his response to the defendants' motion for summary judgment, Document 70 in the prior case.

16. In the prior case plaintiff presented as evidence two letters from two of his treating physicians attesting to the fact that he is disabled, which he also attaches to this Complaint. However, the Court in its Order stated that it "had not scoured the record to identify evidence supporting Mr. Lewis ['s claim of being disabled]." (Order p. 4).

17. Mr. Lewis also presented in discovery and filed as evidence 11 signed, hand-written letters from 11 lay witnesses, copies of which are also attached to this complaint, which support the claims underlying his complaint and oppose all of the defenses raised by the defendants in this case.

18. With regard to these, the Court stated in its dismissal order, "[e]ven assuming those statements are relevant to the reason the defendants terminated his gym membership, they are silent as to whether Mr. Lewis was disabled as defined by the ADA.

19. This is a most unusual justification for a grant of summary judgment, which should be granted only in cases where the plaintiff fails to put forth evidence to support his case. Where there is any evidence supporting the plaintiff's claims, or where such evidence is in dispute between the parties, as indicated in the letter plaintiff received from the Department of Justice when he originally filed this complaint, as justification for their refusal to issue a decision on the merits of plaintiff's complaint, as described, *infra,* summary judgment is not appropriate.

20. Lay witnesses, like the ones whose statements plaintiff presented in the prior case, and which he attaches to this complaint, *infra,* testify to events and character. By

definition they are not expert witnesses and cannot not be expected to provide expert testimony or evidence on the issue of plaintiff's diagnoses of being disabled. That evidence was set forth in the letters from plaintiff's treating physicians, attached hereto, *infra,* which the Middle District admitted that it "did not scour the record to identify" or find.

21.     Plaintiff also lost a very formidable and viable employment law case in the Middle District, *see Lewis v. Gibson,* 1:12-cv-1189 (M.D.N.C. Dec. 15, 2014), when the Court made similar illogical and errant conclusions.

22.     Because of bias and prejudice, plaintiff is not able to receive a fair review of his case in the Middle District of North Carolina.

23.     Due to all of the foregoing, plaintiff feels, believes and knows that he cannot receive a fair trial on any tort case in the Middle District of North Carolina.

24.     Plaintiff is a permanent resident of Bladen County, which is a part of the Eastern District of North Carolina. Plaintiff was born and reared in Bladen County. Plaintiff owns property in Bladen County at 7028 Hwy 53 West, White Oak, NC 28399. Plaintiff pays property taxes in Bladen County. Plaintiff has voted in Bladen County for most of his adult life. His driver's license shows his permanent residence as Bladen County.

25.     In 1945 a "minimum contacts" test was announced by the United State Supreme court in *International Shoe Company v. Washington,* 326 U.S. 310 (1945), in which the Court held that a party may be subject to the jurisdiction of a state court if it has "minimum contacts" with that state.

26.     Similarly, Rule 4 of the Federal Rules of Civil Procedure directs every federal court to follow the law on personal jurisdiction that is in force in the state courts where the federal court is located. Federal courts may also use state long-arm statutes to reach defendants beyond the territory of their normal jurisdiction. This court may exercise personal jurisdiction over a defendant regardless of where the defendant resides or is found.

27.     Defendant Conteh has a Linked In profile indicating that he is a certified fitness

expert at Millennium Sports Club, and that this club is located in "Raleigh-Durham, North Carolina." Defendant Conteh indicates that he has been in this position since January of 2003, or for 16 years and 5 months as of the time of this filing.

28. Defendant Conteh and defendant Millenniums' clientele for the past 16 plus years comes from the entire Raleigh-Durham region; it spans both the Middle and Eastern districts of North Carolina. Defendant Conteh and Millennium's contacts in the Eastern District therefore reach the citizens of this District.

29. This gives defendants Conteh and Millennium sufficient minimum contacts so as to provide this Court with personal jurisdiction over defendant Conteh. A defendant may be subject to personal jurisdiction even through he has never entered the forum [state]." *Burger King v. Rudzewicz,* 471 U.S. 770 (1985)(upholding persona jurisdiction over franchise owners in Florida, even though owners had no physical presence in Florida). *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770 (1984)(New Hampshire courts possessed personal jurisdiction over a defendant magazine publisher, where the defendant's only contact with the state was the monthly sale of 10,000 to 15,000 magazines in New Hampshire).

30. Similarly defendant Nauseef maintains a Linked In webpage indicating that he is General Counsel in the Raleigh-Durham, North Carolina Area and that he has been the counsel for the Fraternal Order of Police in the Raleigh-Durham, North Carolina area since January of 2018, for one year and five months as of the time of this filing. In addition, defendant Nauseef has been the North Carolina Sheriff's Police Alliance's legal counsel for the past nine years. His contacts and business dealings with the Eastern District (and the entire state of North Carolina) extend far beyond this and extend far beyond the minimum necessary for this Court to have personal jurisdiction over defendant Nauseef.

31. Due process is satisfied when a non-resident has sufficient minimum contacts with a state or district such that exercise of jurisdiction over him does not offend traditional notions of fair play and substantial justice.

32. Venue in the Eastern District is therefore proper under 28 U.S.C. Section 1391(b)(3) in that (1) it is plaintiff's home district where he was born and raised;

(2) it is right next to the middle district where the underlying events occurred, (3) it is the closest judicial district in which plaintiff may be given a non-prejudicial review of his case, (4) due to their having sufficient minimum contacts in this judicial district, this Court has personal jurisdiction over all three defendants; and (5) as plaintiff is a native son to this region of North Carolina, plaintiff feels that this is the district in which his case will be treated and adjudicated fairly.


## PARTIES

33.    Plaintiff, Paul A. Lewis, is and at all times relevant hereto, has been a resident of Bladen County, North Carolina. Plaintiff is, and at all times relevant hereto, has been medically disabled as declared by his treating physicians.

34.    Plaintiff was declared medically disabled in August of 2011 after he was terminated from his employment with the Veteran's Administration of the United States government. He receives disability payments from the federal government due to having degenerative disc disease, severe arthritis in his back, neck, knees and joints.

35.    In addition to this Plaintiff has been diagnosed with severe mental disabilities including major depression, bipolar disorder and ADHD. All of plaintiff's disabilities require him to take medications. Both his disabilities and the side effects of the medications he takes limit his ability to perform in his daily life, and require him to engage in life, including physical activities, in a limited way.

36.    Plaintiff is therefore a member of a protected class under the ADA, 42 U.S.C. Section 12102(2), and the regulations implementing the ADA set forth at 28 CFR sections 36, 101 *et seq.*

37.    Defendant Millennium Sports Club, (hereinafter "Millennium" or "Defendant Millennium") is for-profit health club organized under the laws of North Carolina currently located and doing business at 3409 Hillsborough Road in Durham, North Carolina.

38.    Defendant Millennium regularly holds public events including community affairs

and fundraisers. It is therefore a public accommodation pursuant to 42 U.S.C. 12181 and is required to comply with the requirements of Title III of the ADA.

39. Defendant Patrick Conteh, (hereinafter "Defendant Conteh") is the owner and manager of Defendant Millennium.

40. Defendant Robert J. Nauseef, (hereinafter "Defendant Nauseef"), was, at relevant times, a member of Millennium. Defendant Nauseef has been acquainted with Plaintiff for at least ten years and knows Plaintiff's character. He represented defendant Conteh as his retained attorney in the prior lawsuit for a period of time relevant to this present case.

## THE FACTS

41. Prior to the events giving rise to this lawsuit, plaintiff was a member of Defendant Millennium for more than twenty years.

42. At times he has difficulty walking because of his severe arthritis and degenerative disc disease. Due to his disabilities and resultant health condition, plaintiff used to spend several hours a day at the Millennium gym in the sauna and steam room. He would go twice a day in order to keep his joints from becoming stiff.

43. Plaintiff's other disabilities that relate directly to his gym activities include hearing, vision, and mobility disabilities, as well as sleeping difficulties and medication side effects, which cause him to become sick and sometimes prevent him from being punctual in the morning.

44. On many days, plaintiff's disabilities keep him awake late into the night or early morning hours. His disabilities require that he take medications that sometimes make him sick and unable to sleep. Many times he awakens very tired and sick.

45. For all of these reasons, it is sometimes difficult for Plaintiff to function effectively and efficiently in the morning or to arrive on time for morning activities.

46. Despite all of the foregoing, plaintiff has always pushed himself each day to be as physically active as his body and disabilities allow. Sitting in one spot for more

than 30 minutes causes his joints to swell and stiffen and so movement and physical activity reduces the pain and suffering he experiences due to his disabilities.

47. As a result of his disabilities, plaintiff used to arrive late to group fitness classes, including Zumba classes, at defendant Conteh's health club, defendant Millennium. Sometimes when plaintiff arrived at Millennium for the group fitness classes, the class may have started even fifteen minutes prior to his arrival. Still, given everything he was dealing with, he attended class regularly and did his best.

48. The class used to fill up from the back to the front of the room, in terms of where people stand. Prior to his termination from Millennium gym, which is a subject matter of this lawsuit, Plaintiff had stood in the same spot in the same class for twenty years. His spot on the floor was in the front row, to the right of the instructor's stage. Plaintiff purposefully chose that spot to stand in class because he also has 50% hearing loss. From that spot, he can both see and hear the instructor cue the class, as it is only a few feet from where the instructor stands.

49. In addition, no one else had ever stood in that spot since plaintiff began attending the class. The spot was always available on both sides of the stage regardless of whether plaintiff arrived late or early to class.

50. During his 20-year tenure of membership at the gym, plaintiff also served in various capacities, including as a fitness instructor, trainer, massage therapist, esthetician, as well as an employee in the daycare.

51. Millennium was originally called Rick Flair Gold's Gym when plaintiff began attending in 1994. It then went through a series of name and ownership transitions, including Gold's Gym, Fit South and then, in or around 2006, it became known as Millennium Sports Club.

52. During the various transitions, the gym met at 1821 Hillandale Road in Durham, North Carolina. In June of 2006, the club relocated to 3409 Hillsborough Road in Durham.

53.     From June of 2006 until late 2013 or early 2014, a person named Rusty, whose last name is unknown to plaintiff, owned Millennium. Plaintiff never experienced any problems as a gym member prior to or under Rusty's ownership, nor under any previous owners.

54.     In or around the end of 2013, or the beginning of 2014, defendant Patrick Conteh became the owner and manager of defendant Millennium. Prior to purchasing Millennium, defendant Conteh had been a personal trainer at Millennium.

55.     For the first few months of his tenure as owner and manager, defendant Conteh behaved respectfully toward Plaintiff.

56.     In or around May of 2014, defendant Conteh began approaching plaintiff, telling him he had received "complaints" regarding plaintiff arriving late for class and going to stand in the front row of the class. Defendant Conteh told plaintiff that he should go and stand at the back of the class.

57.     Plaintiff informed defendant Conteh that his reason for arriving late were due to his health conditions. In addition, plaintiff informed defendant Conteh that nobody ever stood in the spot where plaintiff stood in the class, that the class filled up from the back, and that the only remaining spots when he arrived late were in the front of the class.

58.     Defendant Conteh then told plaintiff that if he arrived late, he should not take the class. Plaintiff declined to stand in the back of the class when he arrived late, and would continue to go to his usual spot when he arrived late or on time.

59.     On one occasion when he did this defendant Conteh walked plaintiff to the door and told him where to stand – which was in the back of the room. Plaintiff again told defendant Conteh that his health issues prevented him from coming on time and that he stood in that location because that was the only available spot to stand in if he arrived late.

60.     For several months after this event, plaintiff experienced the following treatment from defendant Conteh: (1) he was called in to defendant Conteh's office; (2) he was stopped at the door of the class; (3) he was escorted to the aerobic studio and

told where to stand, or (4) he was told to go to the back of the class. This oppression, harassment, insensitivity and mistreatment of plaintiff continued for several months.

61. During this time, in or around June or July of 2014, defendant Conteh added one more layer to his mistreatment of plaintiff. He began approaching plaintiff regarding plaintiff wearing a YMCA T-shirt while on the premises at Millennium. Defendant Conteh told plaintiff that his wearing the YMCA T-shirt at Millennium was "bad advertisement" for his gym. Plaintiff declined to stop wearing the T-shirt.

62. In or around August of 2014, defendant Conteh began threatening plaintiff directly. He told plaintiff, "if I hear one more complaint about your coming to class late and going to the front of the class, you are out of here." Plaintiff's response to defendant Conteh was always the same. He told him that his health issues prevented him from coming on time and that he stood in that location because that was the only available spot if he arrived late.

63. Plaintiff tried to come to the class on time, but his medical issues prevented it. The daily medications he takes for his disabilities made him sick many mornings prior to coming to class and made it difficult for him to arrive by 9:30 am, when the class started.

64. Several of the female members of the class sometimes walked into the class late. Plaintiff observed that defendant Conteh never said anything to them about it. Plaintiff was the only male member of many of the Zumba classes offered by the gym.

65. One day in or around October of 2014, defendant called plaintiff into his office while plaintiff was checking into Millennium. He told plaintiff, "I talked to you several times about arriving late and going to the front of the class. It is obvious you are going to do what you want to do. If I receive one more complaint about you, you're out of here." When he said this, defendant Conteh was emotional and waving his hands in the air.

66. To plaintiff's knowledge, no one at Millennium has ever lodged a complaint about

him. Upon information and belief, defendant Conteh invented that fiction in order to justify terminating plaintiff's membership from Millennium, when the truth is that defendant Conteh did not respect plaintiff's disabilities, his health issues, or his needs and simply wanted plaintiff out of his gym.

67.     On November 4, 2014, plaintiff arrived at Millennium to attend a Zumba class and was stopped at the door by defendant Conteh. Defendant Conteh told Plaintiff that he had terminated his membership because he had received complaints about plaintiff coming to class late and going to the front of the class. Defendant Conteh threatened to call the police if Plaintiff did not leave the premises.

68.     Plaintiff left on that date and has not since returned to Millennium. Plaintiff never received a letter explaining the reason for his termination, nor did he ever receive any written notice prior to being terminated.

69.     Plaintiff was utterly humiliated by defendant Conteh's mistreatment of him. His termination from Millennium caused him to go into a depression and seek the aid of a counselor.

70.     As a 20-year member of this gym, plaintiff had been in association with the same group of people at the gym for twenty years. After he was terminated from membership, many of these people with whom he had built relationships during that time shunned him and stopped responding to his calls, emails and notes. They shunned plaintiff in public and were afraid to speak to him in public due to their fear of having their memberships cancelled.

71.     Plaintiff saw these members at Kroger's, Sun Trust, Dollar General and other public places due to the fact that these stores were in the same strip mall as the gym. When this happened some of these members, whom plaintiff had known for twenty years, would not look at him and avoided conversations with him.

72.     Plaintiff has been an ordained minister for 38 years and has attended the same church in the community for 23 years. Some of the members of his church attend Millennium gym also. Because of the cross-connections, plaintiff experienced severe stress, embarrassment and emotional distress as a result of defendant

Conteh's unlawful actions.

73.  One member who did not shun plaintiff told him that she was considering putting together a petition to have him reinstated at the gym, but later declined stating she feared her membership would be revoked also. An employee of Millennium told plaintiff that she agreed that what had happened to plaintiff was wrong, but that she would not go against defendant Conteh in favor of plaintiff because she needed her job.

74.  In addition to attending classes at Millennium for 20 years, plaintiff also used to participate in fundraises, sponsored by his Zumba dance group, for agencies such as the March of Dimes, the American Cancer Association, the American Heart Association and AIDS Awareness, among others. These fundraisers were often held at the gym. Since his termination, plaintiff has not been allowed to participate in any of those functions.

75.  Defendant Millennium also hosted many public events that supported the Make a Wish Foundation, Breast Cancer Awareness, the American Heart Association, the Ronald McDonald House, the American Cancer Association, as well as private events. The plaintiff also helped organize a large toy donation/collection during the Christmas season. Prior to his termination from the gym, plaintiff participated in these events by setting up and taking down equipment, as an instructor and by selling tickets to the events. Since he was terminated from the gym and threatened by defendant Conteh, plaintiff has been unable to participate in these public events at the gym.

76.  Plaintiff has known defendant Conteh for well over ten years. They were employed at the same time at the gym when it was called Fit South. Defendant Conteh was a trainer and plaintiff worked in the day-care, sub-aerobics department and spa area.

77.  Plaintiff has also known defendant Nauseef, who is an attorney, for a number of years as defendant Nauseef also attended the same gym as plaintiff and defendant Conteh. Plaintiff has interacted with defendant Nauseef enough that defendant Nauseef is familiar with plaintiff's character. Plaintiff had once an informal client-attorney conversation with defendant Nauseef, prior to his termination from

Millennium, with regard to plaintiff's mother's will. Defendant Nauseef informally counseled plaintiff regarding this will.

78. In November of 2014, shortly after his termination from Millennium, plaintiff filed a complaint against defendant Conteh and Millennium with the US Department of Justice ADA division. In April of 2015 he filed a letter with the Disability Rights of North Carolina.

79. Plaintiff was directed by the Disability Office of North Carolina to contact defendant Conteh a final time in writing and ask that he reinstate his gym membership, and to accommodate his disabilities.

80. On April 16, 2015, plaintiff sent defendant Conteh a letter, via certified mail, with return receipt, a copy of which is attached hereto as Exhibit A, in which he informed defendant Conteh that he had violated the ADA in terminating plaintiff's membership, that he was disabled, and that he had a right to access to all public accommodations, including Millennium gym. He asked that he reinstate his membership and again explained why he arrived late and stood in the front of the class.

81. On September 30, 2016, plaintiff filed a complaint, attached hereto as Exhibit B, with the Consumer Protection Division of the North Carolina Department of Justice about defendant Conteh's actions. The Department contacted Millennium about the complaint.

82. In a letter dated October 18, 2016, a copy of which is attached to this Complaint as Exhibit C, defendant Nauseef responded to the Department's inquiry into this matter, as the retained attorney for defendant Conteh.

83. In this letter, defendant Nauseef failed to mention the fact that he knows plaintiff personally, had known him for 10 years, and his personal knowledge of plaintiff's character.

84. In this letter defendant Nauseef falsely writes that the "manager of the facility had spoken to Mr. Lewis on at least nine (9) occasions about his harassment of female members in the Zumba classes, his interruption and disruption of many of the

Zumba classes and his intimidation and language while on the premises." This is all utter nonsense.

85. Defendant Nauseef goes on to falsely accuse plaintiff of being "solely responsible for my client's losing four (4) valued members after they canceled their membership due to his behavior and conduct."

86. As described, *infra,* Conteh and Nauseef conspired to invent these falsehoods against plaintiff. This accusations consist of nothing but the bearing of false witness against plaintiff, and were made in an effort to relieve and defend defendant Conteh's behavior and mistreatment of plaintiff and as a way of defendant any action plaintiff might take against Conteh for violating the law.

87. As evidence of defendant Conteh's character, and willingness to obey the law, defendant Nauseef further wrote: "At no time did Mr. Lewis ever communicate to management that he had a disability and that did not nor would it, have been a factor in his dismissal."

88. By letter dated October 21, 2016, the Department wrote plaintiff indicating that it had chosen not to take any action regarding the complaint due to an alleged "factual dispute" between Millennium and plaintiff. It is precisely this dispute, which prompted plaintiff to file the prior lawsuit; and which prompts him to file the current one.

89. Subsequent to receiving this letter, plaintiff sought and obtained written statements, which can be considered character references, from eleven former and current members of Millennium who have interacted with and known plaintiff, and the nature of his character, for many years. These individuals include both instructors and members of the Zumba class at Millennium, and include many prominent members of the community of Durham, North Carolina. A copy of the entirety of these letters is attached hereto as Exhibit D.

90. Each of the foregoing eleven individuals wrote, without exception, that he or she had never witnessed plaintiff behave rudely or disrespectfully toward any gym member especially female members of the Millennium.

91. Each of the foregoing individuals wrote, without exception, that they had never known plaintiff to use abrasive or harsh language of any kind at the gym or anywhere.

92. Each of the foregoing individuals wrote, without exception, that they had never known plaintiff to be disruptive, in classes or while on the premises at Millennium or anywhere.

93. Each of the foregoing individuals wrote that they had never seen plaintiff present any type of aggressive behavior in aerobics class, Zumba class, Zumbathon or any other while on the premises of Millennium. In their letters, these individuals describe plaintiff as kind, helpful, respectful, courteous, considerate, "the opposite of intimidating", appropriate, kind, gentlemanly, friendly, polite and nice, that he "is respectful always" and "respects all boundaries."

94. One individual wrote, "I believe that Paul might be a target because he stays in front and is sometimes on his own time. He is never disruptive in my classes!"

95. Another individual described plaintiff as a gentleman, and further wrote: "Paul is a well rounded person who enjoys life. He talks and interacts with anyone who he encounters. His approach is never threatening, disrespectful, rude, or in a sexual manner. Paul has a lot he inspires to do in life. He is free hearted and very loving."

96. In a word, these witness statements completely eviscerate defendant Nauseef's letter and defendant Conteh's purported defense and show the conspiratorial behavior which both defendants engaged in in their efforts to deal with the prior lawsuit, as further described, *infra*.

97. Regarding the fact of plaintiff's disabilities, copies of two letters, attached hereto as Exhibits E and F from two of his treating physicians reveal the nature and extent of his disabilities and show that plaintiff is indeed a disabled individual within the meaning of the Americans with Disabilities Act.

### FIRST CAUSE OF ACTION
### (Violation of the ADA, 42 U.S.C. Section 12101 et seq. by Defendants Millennium and Conteh)

98. The allegations contained in the previous paragraphs are incorporated by reference.

99. Defendants Millennium and Conteh have discriminated against plaintiff by failing to respect and reasonably accommodate plaintiff and his disabilities as a member of Millennium, in violation of the ADA.

100. Defendant has violated plaintiff's rights under the ADA by forbidding him to enter the premises not only as a member of the gym to use the facilities therein and attend the exercise classes, and by forbidding him to attend public fundraisers and events held on the premises.

101. Defendant's conduct in this regard is ongoing as plaintiff has been forbidden to set foot upon the premises of defendant Millennium since he was terminated and threatened by defendant Conteh.

102. Without the requested injunctive and declaratory relief, Defendant's unlawful and discriminatory actions against plaintiff will go unredressed and recur.

## SECOND CAUSE OF ACTION
### (Defamation of Character by Defendants Conteh and Nauseef)

103. The allegations contained in the previous paragraphs are incorporated by reference.

104. As described herein, Defendant Nauseef caused injury to plaintiff by making false, defamatory statements about plaintiff, which constitute libel, which were published in a letter to the North Carolina Department of Justice.

105. Defendant Nauseef made the libelous statements that plaintiff had been terminated from Millennium because he had "harassed female members of the class" and "used intimidation and language" at the gym.

106. Defendant Nauseef knows that these statements are false because he has known and interacted with plaintiff for many years and knows his good character.

107. Defendant Conteh made oral statements to the same effect to other members of

the gym in an effort to discredit Plaintiff, knowing such statements were false. Plaintiff knows this because of the things people told him, and they way gym members looked at him and treated him after he was terminated. He also knows this because of defendant Nauseef's libelous letter to the Department of Justice.

108. These false and fraudulent statements have impeached, injured and damaged plaintiff and his reputation in the community of Durham and in and around North Carolina.

109. As an actual and proximate cause of Defendant Nauseef and Defendant Conteh's conduct in making such false statements about Plaintiff, Plaintiff has sustained harm, including damages in an amount to be determined at trial but reasonably believed to be in excess of $250,000.

## THIRD CAUSE OF ACTION
### (Civil Conspiracy by Defendants Conteh and Nauseef)

110. The allegations contained in the previous paragraphs are incorporated by reference.

111. Upon information and belief, defendants Conteh and Nauseef conspired and agreed to deprive plaintiff of his legal rights as a member of a protected class of individuals by asserting false claims about his character and behavior at the gym, in an effort to excuse defendant Conteh's wrongdoing as described herein.

112. Defendant Nauseef then carried out this plan by committing libel in sending the letter containing said falsehoods about plaintiff to the Department of Justice.

113. Defendants Conteh and Nauseef then continued their campaign of wrongdoing in this regard during the time of the prior lawsuit in which Nauseef represented Conteh and furthered the conspired to defamation.

114. In a telephone conversation with plaintiff's former attorney, Mary March Exum, defendant Nauseef became angry when plaintiff refused to drop the lawsuit against him. During this telephone conversation, Nauseef threatened plaintiff by telling Ms. Exum, "if he doesn't agree to drop this case against me, I will bring so many girls forward to say that your client has harassed them." Ms. Exum understood clearly that defendant Nauseef was threatening to further defame her

client. See Exhibit G, Affidavit of Mary March Exum.

115. Defendant Nauseef made this statement knowing that it was illegal and tortious demonstrating the reality of his and defendant Conteh's intention to break the law in their method of defending Conteh against plaintiff's lawsuit.

116. The prior suit which plaintiff filed against defendant Nauseef was dismissed; and ultimately defendant Conteh won on summary judgment due to the failures of the Middle District to properly adjudicate this case, as described herein.

117. These conspiracies to spread false and fraudulent statements about plaintiff have proximately caused damage to plaintiff and his reputation in the community of Durham and in and around North Carolina.

118. As an actual and proximate cause of defendant Nauseef and defendant Conteh's conspiratorial conduct in creating the false statements about plaintiff and his character, plaintiff has sustained harm, including damages in an amount to be determined at trial but reasonably believed to be in excess of $250,000.

## FOURTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress
### by Defendants Conteh and Nauseef)

119. The allegations contained in the previous paragraphs are incorporated by reference.

120. Defendant Conteh's conduct in terminating plaintiff's membership under false pretenses and defaming his character such that other members of the gym and his community shunned and avoided him constitute outrageous conduct insofar as they were without any basis in fact.

121. Defendant Conteh's willful acts were intended to cause plaintiff to be terminated from the gym and the community he had been a member of for twenty years without regard for his physical and mental disabilities.

122. Defendant Conteh's willful actions were intended to humiliate and did humiliated plaintiff.

123.  Defendant Conteh intended to cause plaintiff emotional distress, and/or acted in reckless disregard of the likelihood of causing plaintiff emotional distress in committing these acts.

124.  In conspiring with defendant Conteh to attempt to make the prior suit go away, defendant Nauseef also committed willful acts intended to cause plaintiff emotional distress, and which did cause him emotional distress.

125.  As a direct and proximate result of these two defendants' willful actions, plaintiff has suffered and continues to severe mental anguish and emotional and physical distress.

### FIFTH CAUSE OF ACTION
**(Negligent Infliction of Emotional Distress
by Defendant Nauseef)**

126.  The allegations contained in the previous paragraphs are incorporated by reference.

127.  Defendant Nauseef's actions in this case, once he realized who plaintiff was, in threatening to bring forward false witnesses unless plaintiff dismissed defendant Nauseef from his prior lawsuit constitute outrageous conduct insofar as they were without any basis in fact, and were likely to cause plaintiff, and did cause plaintiff emotional distress.

128.  In committing the actions as set forth herein, defendant Nauseef's conduct negligently caused plaintiff emotional distress, and/or defendant Nauseef acted in disregard of the probability of causing plaintiff emotional distress.

129.  As a direct and proximate result of the actions of defendant Nauseef, plaintiff has suffered and continues to suffer economic damages, severe mental and emotional

anguish.

## SIXTH CAUSE OF ACTION
### (Punitive Damages against Defendants Conteh and Nauseef)

130. The allegations contained in the previous paragraphs are incorporated by reference.

131. Defendants Conteh and Nauseef made the statements and took the actions described herein with malice or reckless disregard of their falsity in order to harm Plaintiff.

132. Defendants acted willfully and/or wantonly in making the statements and taking the actions described herein.

133. Pursuant to N.C.G.S. Section 1D-1, because of the defendants' conduct, as described herein, Plaintiff is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Paul A. Lewis, requests judgment against all defendants as follows:

1. For Plaintiff to be reinstated as a member of Millennium as a member and accommodated for his disabilities.

2. For appropriate declaratory and injunctive relief regarding the unlawful and unconstitutional acts, omissions and practices of defendants;

3. For appropriate actual compensatory damages from each defendant in an amount sufficient to compensate plaintiff for the damages resulting from the defendants' conduct;

4. For appropriate equitable relief from all defendants including the enjoining and

permanent restraining of the violations described herein, and direction to defendants to take such necessary action to ensure that the effects of the unconstitutional and unlawful practices are eliminated and do not continue to affect plaintiff or other disabled individuals, similarly situated;

5. For the recovery of punitive damages from all defendants due to the reckless, intentional and willful disregard for plaintiff's wellbeing, as described herein;

6. For an award of reasonable attorney's fees and costs to plaintiff; and

7. For such and other further relief to which plaintiff may show himself to be justly entitled.

**PLAINTIFF REQUESTS TRIAL BY JURY
ON ALL ISSUES SO TRIABLE.**

This the 24th day of June, 2019.

_s/Paul Arnold Lewis_
Paul Arnold Lewis
Plaintiff, *pro se*
7028 Hwy 53 West,
White Oak, NC 28399.
Email: palewis400@gmail.com
Tel: (919) 943-6105